**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MELVYN O. WALTON, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05-C-3809** |
| **v.** | ) | |
| | ) | **JUDGE DAVID H. COAR** |
| **JOHN E. POTTER, Postmaster General,** | ) | |
| **United States Postal Service** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Melvyn O. Walton, Jr. ("Plaintiff" or "Walton") has brought suit against

Defendant John E. Potter ("Defendant" or "Potter") for employment discrimination based on

race, age, and sex under Title VII (42 U.S.C. § 2000e), 42 U.S.C. § 1981, and the Age

Discrimination in Employment Act (29 U.S.C.A. § 621 et seq.) ("ADEA"). Now before this

court is Defendant's motion for summary judgment (Doc. No. 37) filed pursuant to Federal Rule

of Civil Procedure 56. For the reasons stated below, Defendant's motion is GRANTED.

**1.       FACTS**

Melvyn O. Walton was hired by the United States Postal Service ("USPS" or "Postal

Service") in March of 1985. Facts ¶ 1. Walton was based out of the Chicago, Uptown Station,

where he was supervised at various times from 2000 through 2004 by Jeanette Drane Lake,

Daniel Dees, Marcus Near, and Loretta Wilkins. Pl.'s Add'l Facts ¶ 2. He was ultimately fired

in June 2004. Facts ¶ 2.

The United States Postal Inspection Service ("Inspection Service") conducted an investigation of Walton, the investigative memorandum of which is dated September 9, 2004. Id. ¶ 13. The October 20, 2004, Notice of Removal discussed this investigation and noted that the Inspection Service had "delayed mail hidden in white postal tubs beneath [his] case." Id. ¶ 14. It further noted: that "approximately 250 pieces of hidden and delayed mail was recovered from [Plaintiff's] route case number 4047," id. ¶ 15; that one piece of mail had been opened so that the contents could be seen, id. ¶ 16; and that one parcel had been scanned as delivered through the Postal Service's track and confirm system even though it was still at the post office, id. ¶ 17.

Walton was issued a letter of warning in January of 2003 for failure to perform his assigned duties. Id. ¶ 3. Walton was suspended in March of 2003 for failure to adhere to safety regulations and deviating from his assigned route. Id. ¶ 4. Walton was suspended again in September 2003 for failure to complete his duties in a satisfactory manner. Id. ¶ 5. The Postal Service issued Walton a notice of removal on January 13, 2004, for failing to complete his duties in a satisfactory manner. This removal was held in abeyance for 30 days "pending no other infractions beginning 2-14-04." Id. ¶ 6. The Postal Service suspended Walton in June for failing to following instructions by deviating from his assigned route. Id. ¶ 7. Walton was issued and received a Notice of Emergency Procedure on September 29, 2004, which suspended him without pay. Id. ¶ 9. The Postal Service issued Walton a notice of removal in October 2004, that cited a report by the Inspection Service. Id. ¶ 8.

Walton's first contact with an EEO counselor was December 22, 2004. Id. ¶ 10. When the Postal Service issued its Final Agency Decision on Walton's EEO complaint, it explicitly

dismissed his Notice of Emergency Procedure discrimination claim because his contact with the EEO office was "beyond 45 days from the date you allege you were discriminated against." Id. ¶ 11. Walton submitted a written request for counseling on January 6, 2005. Id. ¶ 11.

Walton received the Postal Service's Final Agency Decision (FAD) denying and dismissing his claims on March 29, 2005. Id. ¶ 18. Walton filed his initial federal complaint in June of 2005. See id. ¶ 19. In it, he claims that Plaintiff is liable for discrimination based on: race and color (Count I); age (Count II); and sex (Count III).

## 2.   SUMMARY JUDGMENT STANDARD

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he or she must go beyond the pleadings and support contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of*

*Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). The Seventh Circuit has made it clear that "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) as stating that "[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). However, it is possible to rebut a motion for summary judgment with the allegations of a complaint, but only to the extent that they are based upon the plaintiff's personal experience.

*See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (requiring that allegations are admissible at summary judgment under 56(e) so long as they are "based on personal knowledge and [set] forth specific facts showing that there is a genuine issue for trial"). The fact that those statements may be "self-serving" is not a valid grounds for deeming them inadmissible. *See id.*

**3.    ANALYSIS**

a.    <u>Procedural matters</u>

Defendant maintains that summary judgment should be granted with respect to all claims premised on the Notice of Emergency Procedure, based on Plaintiff's failure to address the issue to the Postal Service's EEO office within 45 days of the incident and the administrative exhaustion requirement for Title VII in this instance. *See* Summ. J. Mem. at 2-3; *Ester v. Principi*, 250 F.3d 1068 (7th Cir. 2001). Plaintiff replies that he failed to understand the filing requirement as a result of "ineffective notice at the post office and misleading language in the Notice of Emergency Procedure, and that the 45 day limit should be equitably tolled accordingly." Pl.'s Resp. to Summ. J. at 3. Plaintiff further argues that his failure was done in good faith, as he simply misinterpreted the legal requirements, and that he otherwise acted promptly in pursuing his claim evidences his active pursuit of the case. He requests that this Court exercise its power to equitably toll the applicable 45-day deadline. *See Gray v. Potter*, 115 Fed. Appx. 891, 893 (7th Cir. 2004).

This Court sees no reason to extend a clear deadline for Plaintiff's stated reason. He worked in the USPS for nearly twenty years, and though he now claims that he was not given proper notice in the workplace, he has offered nothing to show the nature of that notice. *See Stark v. Dynascan Corp.*, 902 F.2d 549 (7 Cir.1990) ("On a motion for summary judgment, the

burden is on the plaintiff to present facts which, if true, would justify equitable tolling of the statute of limitations."). For all the record shows, there could have been a large poster sitting in front of Plaintiff's work station that stated the relevant law clearly and succinctly. While Plaintiff is correct that even this posting would not necessarily have been sufficient, it at least would provide this Court with a proper starting point for evaluating the notice he was given. *See generally Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995) (considering the adequacy of posted notices); *see also* 29 C.F.R. § 1614.105(a)(2) (requiring that plaintiff requesting equitable tolling "did not know *and reasonably should not have ... known* that the discriminatory matter or personnel action occurred") (emphasis added). Oddly, Plaintiff instead relies on his prompt but mistakenly taken action as proof that Defendant did not give him proper notice of what the correct action should have been.

Similarly, Plaintiff's claim regarding the Notice of Emergency Procedure language – which states that he had "the right to file a grievance under the Grievance/Arbitration procedures set forth in Article 15 of the National Agreement within 14 days of your receipt of this letter" – does not justify Plaintiff's assumption at the time that he had no rights under other laws. Plaintiff also attempts to portray the Emergency letter as failing to provide him with a "final, ultimate, [and] non-tentative decision to terminate" over which he could pursue a claim. Resp. to Summ. J. at 5. However, to the extent that this is true, the letter either fails as an adverse employment action cognizable under discrimination law, or simply melds with the larger claim based on termination.

That Plaintiff was generally motivated to pursue his claim is an insufficient basis to toll a clear requirement of the law. Therefore, Defendant's motion for summary judgment is

GRANTED to the extent that Plaintiff's Title VII claim is based upon the Notice of Emergency Procedure.[1]

Defendant also maintains that all claims are properly barred because Plaintiff failed to file his claim within 90 days of receiving his right-to-sue letter. Plaintiff replies that the court clerk's office is at fault, because they told him twice upon his arrival that he didn't have the requisite forms or copies and that therefore refused to accept his timely filings. This is a fairly straightforward instance of filing error by clerk employees compounded by a missed deadline. Plaintiff was required to file the complaint in this action within 90 days of receiving the Final Agency Decision. *See* 42 U.S.C. § 200e-16(c). It is uncontested that Plaintiff received the decision on March 29, 2005. Plaintiff maintains that he attempted to deliver his complaint to the clerk's office on Friday, September 24, 2005. However, one of the workers there supposedly told him that he could not file it without additional copies. If true, this was clearly done in error: "a clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules." *Robinson v. Doe*, 272 F.3d 921, 922-23 (7th Cir.2001), cert. denied, 122 S.Ct. 1976 (2002) (quotations omitted; citing Fed. R. Civ. P. 5(e)). Plaintiff claims he made another attempt on the following Monday, Sept. 27, 2005, but was turned away once again. Plaintiff managed to successfully file on September 29, 2007.

---

[1]Plaintiff has also claimed violations of section 1981, and these claims of race-based discrimination are not impacted by the formal requirements of EEOC procedures. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 166 (7th Cir. 1976) (finding that section 1981 does not require claimants to first bring an EEOC charge).

Defendant is certainly correct that, other than Plaintiff's own attestation, there is "simply no evidence to support his claims that he tried to file his complaint on time but was turned away by the clerk's office." *See* Def.'s Summ. J. Mem. at 6. However, for present purposes that attestation is enough. Plaintiff has not fallen into the trap of directly contradicting his sworn pleadings, and while his deposition testimony does not echo the surety of recent filings, at best this has created a close question of credibility:

> Q:    Let's look at paragraph No. 12. It says that on Friday, June 24, 2005, was the date that you appeared to first file your lawsuit; is that right?
>
> A:    Yes.
>
> Q:    And do you believe that is the correct date that you went to first file your lawsuit?
>
> A:    I'm not sure.
>
> Q:    Do you know where this date came from in your complaint?
>
> A:    I'm not sure.
>
> Q:    Could it have been before that date?
>
> A:    I don't believe so, no.
>
> Q:    Could it have been after that date?
>
> A:    It's a possibility.

Walton Dep. at 25-26. However unsure Plaintiff might have appeared at that point in his deposition testimony, he nonetheless sounded clearer at other times, *see id.* (stating that he first went to the clerk's office "sometime in June, before the deadline"), and certainly has been adamant in his recent written filings, *see* Def.'s Facts ¶¶ 27-30; 2nd Am. Compl. ¶¶ 12-18. This Court is not in a position to weigh these different statements for their authenticity, and must instead make every factual inference in the non-movant's favor. *See Allen*, 236 F.3d at 380; *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (finding that the credibility of testimony is to be taken up by a factfinder rather than decided at summary judgment). Therefore, despite the lack of additional support for the filing problems Plaintiff encountered, summary judgment is DENIED with respect to Defendant's statute of limitations argument.

      b.    <u>Discrimination on the merits</u>

Plaintiff pursues his discrimination claims using the indirect method of proof of *McDonnell Douglas*, and is certainly entitled to do so. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *see also Anders v. Waste Mgmt. of Wisconsin*, 463 F.3d 670 (7th Cir. 2006) (applying *McDonnell Douglas* framework to a § 1981 claim). The indirect method, also called the burden-shifting method, requires the plaintiff first to make out a *prima facie* case of discrimination through establishment of the following four factors: (1) plaintiff had membership in a protected class; (2) plaintiff was meeting the employer's legitimate employment expectations; (3) plaintiff suffered an adverse employment action; (4) similarly-situated employees outside of the protected class were treated more favorably by the employer. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff proceeding under the indirect method of proof fails to establish any of the four factors in the *prima facie* case, summary judgment should be entered for the defendant. If the plaintiff establishes the *prima facie* case, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reasons for the adverse employment action. If the defendant offers a legitimate, non-discriminatory reason for the adverse employment action, the burden returns to the plaintiff to "rebut that explanation by presenting evidence sufficient to enable a trier of fact to find that the employer's proffered

explanation is pretextual [i.e., a lie]." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002).

In attempting to establish a prima facie case of discriminatory termination, Plaintiff has failed to provide evidence on which a reasonable factfinder could believe that he had performed his job satisfactorily. Even if this Court ignores for the time being USPS's reasonable reliance on the description of his misdeeds found in the postal investigation, Plaintiff's workplace performance was inadequate by any measure available to those making employment decisions. It is uncontroverted that there were significant disciplinary problems during his tenure with the USPS. *See* Def.'s Facts ¶¶ 3-7.

Plaintiff attempts to contradict this evidence with the fact that: other employees had similar records but were not terminated; all disciplinary issues were unsubstantiated and/or not his fault; and he worked with USPS for many unproblematic years. *See* Resp. to Summ. J. at 7-8. None of these arguments are compelling. The fact that Plaintiff was kept on for a some time prior to the problematic years in question carries no weight, since job performance in and around the time of his termination is what matters. *See Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993). Plaintiff's remaining "proof" fails because it relies entirely on his own declarations, without any citation to objective job measures or supporting testimony and, in the case of the alleged disciplinary actions against a co-worker, involving matters beyond his realm of knowledge.[2] In light of the evidence against him concerning his poor workplace

---

[2]Even if this Court were to consider Plaintiff's unsupported claim that Cecilia Orta "incurred a 7 day suspension for 'unacceptable conduct/unauthorized curtailment of mail,'" Pl.'s Facts ¶ 33, there is no evidence that this is in any way comparable to Plaintiff's multiple instances of supervisory discipline or would otherwise establish that he himself was working in a satisfactory manner.

performance, including multiple incidents warranting formal reprimand, his own attestations to the contrary are simply not compelling. *See, e.g., Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996). Plaintiff fails this necessary element for proving discrimination, therefore summary judgment against him is properly granted for lack of a prima facie case on all claims of discrimination. *Celotex*, 477 U.S. at 322.

In any event, every indication was that Plaintiff *did* commit the wrongs of which he has been accused in the investigative report, a fact which undermines both his assertion that he was performing his duties satisfactorily, as well as any hope he might show that Plaintiff's stated reason for termination was pretextual. The USPS had every reason to accept the considered investigation into Plaintiff's wrongdoing that ultimately served as the basis for his termination. *See generally* Gov. Ex. B. In it, the Inspection Service summarized the results of a multi-week investigation in July and August of 2004 regarding Plaintiff's activities, and found: "delayed mail hidden in white postal tubs beneath [Plaintiff's] case," some of which dated as far back as March of that year and which totaled approximately 250 pieces; that Plaintiff was in possession of a piece of mail that had been opened so far as to make the contents visible; and that one piece of mail that had been scanned as delivered was still at the post office. *Id.* The Inspection Service referenced the inadequacy of Plaintiff's responses to these allegations, but mentions his claims that a supervisor had told him to do it and that one of the buildings in question was under construction and the corresponding mail was undeliverable. However, at no point did Plaintiff provide the investigator with any evidence of the former and, as to the latter, the investigator used a site visit to determine that no such construction was occurring at the building in question.

This Court does not stand as a court of appeals for employment decisions. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[T]he federal anti-discrimination laws do not authorize judges to sit as kind of 'super-personnel department' weighing the prudence of employment decisions.") (citing *Gleason v. Mesirow Fin, Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997)). Rather, we must consider whether the employer's proffered explanation is a reasonable basis on which it might have taken the adverse employment action in question. In this instance, this Court sees no basis for finding that reliance on this investigation was pretextual.

Plaintiff maintains that the case against him was unproven, but even if this Court were empowered to reconsider the merits of that issue – and it is not – Plaintiff has provided *no* countervailing evidence on which this Court, or more relevantly the USPS, could have found that he was innocent of the charges against him. His only defense against the investigator's claims that he acted to delay and deceive is that he was told to act as he did by his supervisors. However, at no point before or after his termination has he produced testimony from USPS supervisors or co-workers to that effect. Essentially, Plaintiff asks this Court to second-guess the considered opinion of an internal investigation based on nothing beyond his own say-so. He argues that *during his interview* with the postal investigator, "there were no conclusive facts shown or confessions made, and the allegations were not substantiated." Pl.'s Add'l Facts ¶ 17. However, this discussion was hardly the only evidence on which Defendant was able to rely when making the relevant employment determination; the investigator's report cites an extended time frame in which Plaintiff was observed behaving inappropriately with respect to his postal duties, follow-up investigations that disproved his proffered explanations for deviating from policy, and Plaintiff's vague and uncorroborated explanations for his behavior.

-12-

Even if the *prima facie* case were satisfactorily supported by the evidence – which it is not – summary judgment would still be warranted for Plaintiff's failure to show pretext. Therefore, Defendant's motion for summary judgment is GRANTED against all claims that Plaintiff's termination or any other employment action was discriminatory under Title VII, section 1981, or ADEA.

**4.      CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


Enter:


/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **October 5, 2007**